UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, SOUTHERN DIVISION

| LINDA HOLDEN,<br>    Plaintiff,<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>    Defendant. | MEMORANDUM DECISION & ORDER<br>Case No. 4:18-cv-00021-DBP<br>Magistrate Judge Dustin B. Pead |
|---|---|

# INTRODUCTION[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Linda Holden ("Plaintiff" or "Ms. Holden") seeks review of the Acting Commissioner of Social Security's (the "Commissioner") denial of her claim for disability insurance benefits (DIB) and supplement security income (SSI) under Titles II and XVI of the Social Security Act (the "Act"). (ECF No. 3.) Ms. Holden protectively filed applications for DIB and SSI benefits on June 24, 2014, alleging disability beginning on April 1, 2009. (A.R. 200-203, A.R. 204-212.) Her claims were denied initially, upon reconsideration and in an April 25, 2017, opinion issued by Administrative Law Judge Gary Vanderhoof (the "ALJ"). (A.R. 14-31, A.R. 72-73, A.R. 96-97.) The Appeals Council denied Plaintiff's request for review (A.R. 1-6), making the ALJ's ruling the final decision for purposes

---

[1] All references to the Code of Federal Regulations (C.F.R.) are to the 2017 edition. References are generally to Part 404 of the regulations, which addresses DIB claims under Title II of the Social Security Act. The cited regulations have parallel citations in Part 416, which addresses SSI claims under Title XVI.

of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210(a). Ms. Holden's appeal to this court followed.[2] Oral argument was held on December 18, 2018. (ECF No. 26.)

After consideration of the parties' briefs, oral argument, the administrative record and relevant legal authorities, for the reasons set forth herein, the court reverses and remands this matter to the ALJ for further proceedings consistent with this ruling.

## BACKGROUND

Plaintiff was born in 1967, completed one year of college, and worked as an office manager and grocery clerk. (A.R. 227, 234, A.R. 267-75.) She alleges she became too disabled to work full time in April of 2009 due to coronary artery disease, angina, headaches, hypertension, nose bleeds and fibromyalgia. (A.R. 222, 226.) The record contains multiple records showing Ms. Holden had coronary artery disease, previous cardiac events requiring stents and follow-up care, and received primary care from Shivwits Clinic between April 2008 and November 2014. (A.R. 319-52, A.R. 395-421, A.R. 429-521, A.R. 585-697, A.R. 743-786.)

As relevant here, Plaintiff also received care from treating physician Claude Warner, M.D., ("Dr. Warner"). In May 2014, Dr. Warner diagnosed Ms. Holden with fibromyalgia, along with other impairments and conditions.[3] (A.R. 545-577, A.R. 733-742.) In January 2017, Dr. Warner provided a "Fibromyalgia Treating Physician Data Sheet" ("Assessment") opining that Plaintiff could stand/walk for no more than 20 minutes at a time for up to 90 minutes of the

---

[2]All parties consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit. (ECF No. 25) ; *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

[3] On appeal, Plaintiff does not raise any arguments related to her other impairments or conditions. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012) (The court "will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review.").

workday, sit for 3-4 hours of the workday, lift no more than 10 pounds, had temperature restrictions and would have difficulty sustaining full time work. (A.R. 787-793.)

Two state agency physicians reviewed Plaintiff's medical record in September 2014 and February 2015, and opined that Plaintiff's hypertensive vascular disease and anxiety disorder were severe impairments. (A.R. 78-79, A.R. 105-107.) The state agency physicians acknowledged Ms. Holden's fibromyalgia, but did not find it a severe impairment. (A.R. 78-79, A.R. 105-107.)

## **THE ALJ'S DECISION**

In his April 25, 2017 decision, the ALJ followed the familiar five-step sequential evaluation for assessing disability. *See* 20 C.F.R. § 404.1520(a)(4). At Step 2, the ALJ found that Plaintiff had the severe impairments of anxiety disorder, hypertension, and coronary artery disease. At Step 3, the ALJ determined that Ms. Holden did not have an impairment or combination of impairments that met or medically equaled a listing. (A.R. 19-21); *see* 20 C.F.R., pt. 404, subpt. P, app. 1.

At Step 4, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work[4] with the following limitations: occasionally perform postural activities; stand for 2 to 3 hours total in an 8-hour workday; preclusion from working on ladders, ropes, scaffolds, unprotected heights, or dangerous moving machinery; simple, non-detailed and non-complex work; decision-making with occasional work changes; occasional interactions with co-workers and supervisors but not in enjoined projects; no work requiring a high production quota

---

[4] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing." 20 C.F.R. § 404.1567 (b).

3

or fast-paced activity like an assembly line, and limitation to unskilled work that is repetitive in nature with simple, routine tasks and very few variables. (A.R. 21.) Regarding Plaintiff's fibromyalgia, the ALJ found that it was "not a medically determinable impairment because neither of the two sets of criteria for diagnosing fibromyalgia described in section II.A and II.B of SSR 12-2p is met." (A.R. 27). Alternatively, the ALJ concluded that Plaintiff's fibromyalgia was "stable." (*Id.*)

Based on vocational expert testimony, the ALJ found that Plaintiff could not perform her past relevant work, but could perform other unskilled jobs available in the national economy. (A.R. 28-30.) Representative occupations identified included addresser, document preparation clerk and systems surveillance monitor. (A.R. 29.)

As a result, under the five-step disability framework, the ALJ concluded that Ms. Holden was "not disabled." (A.R. 29-30.)

## **STANDARD OF REVIEW**

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (citation omitted). The ALJ's findings "shall be conclusive" if supported by substantial evidence. 42 U.S.C. § 405(g)*; see also Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). Substantial evidence is "more than a mere scintilla [;]" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quotation and citation omitted). When reviewing the record, the court "may neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Madrid v. Barnhart,* 447 F.3d 788, 790 (10th Cir. 2006).

A "failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that the appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1164, 1165 (10th Cir. 2005) (quotations and citation omitted).

## ISSUES

On appeal, Ms. Holden advances two main arguments. First she asserts the ALJ failed to properly evaluate her fibromyalgia. Second, Plaintiff contends the ALJ's conclusion that she can perform work in the national economy is not supported by substantial evidence.

## DECISION

### I. THE ALJ FAILED TO PROPERLY EVALUATE PLAINTIFF'S FIBROMYALGIA

Dr. Warner diagnosed Plaintiff with fibromyalgia. On appeal, Ms. Holden contends the ALJ erred in failing to evaluate the evidence showing that her fibromyalgia is a severe impairment with functional limitations.

Social Security Ruling ("SSR" or "Ruling") 12-2p describes evidence the ALJ must consider in determining if a claimant's fibromyalgia is a Medically Determinable Impairment ("MDR"). *See* SSR 12-2p. In relevant part, SSR 12-2p states:

> We will find that a person has an MDI of FM [fibromyalgia] if the physician diagnosed FM and provides the evidence we describe in section II.A. or section II.B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record.

*Id*. The Ruling further explains that in order to meet section II.A., based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia, a claimant must show: a history of widespread pain that lasts at least 3 months, at least 11 positive tender points on physical examination, and evidence that other disorders that could cause the symptoms were

5

excluded. *Id.* The Ruling also states, in order to meet section II.B., based on the 2010 ACR Preliminary Diagnostic Criteria, a claimant must show: a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms and evidence that other disorders that could cause the symptoms were excluded. *Id.*

Upon review, the court concludes that the ALJ has not supported his findings with substantial evidence or provided a sufficient basis to determine if the appropriate principles were followed. Although there is no discussion of the ALJ's reasons for not including fibromyalgia as a severe impairment at Step 2 (A.R. 19), he does discuss fibromyalgia later in the decision. There he concludes, without explanation, that Plaintiff's fibromyalgia was "not a medically determinable impairment because neither of the two sets of criteria for diagnosing fibromyalgia described in sections II.A and II.B of SSR 12-2 is met." (A.R. 26-27.) In reaching this conclusion, however, the ALJ fails to apply any evidence to the criteria or explain what factors of the criteria are not met. Further, to the contrary, Dr. Warner's Assessment indicates that Plaintiff met both the 1990 and the 2010 criteria, as required under sections II.A and II.B. (A.R. 788-789); *see also* SSR 12-2p.

Next, while acknowledging Dr. Warner as an acceptable medical source, the ALJ states that "a physician's diagnosis alone is not sufficient to support of a finding of fibromyalgia as a medically determinable impairment." (A.R. 26.) In so concluding, the ALJ does not acknowledge, discuss or resolve conflict between evidence of record supporting Dr. Warner's diagnosis, including her Assessment and treatment notes (A.R. 553, A.R. 556-557) (finding Plaintiff "clearly painful in the typical trigger points"). Nor did the ALJ reconcile his findings with other records and tests in the record that identify symptoms and exclude disorders that could cause fibromyalgia-like symptoms. *See* (A.R. 398-400, A.R. 410, A.R. 503-504, A.R. 542, A.R.

552-553, A.R. 556-557, A.R. 559, A.R. 589, A.R. 598, A.R. 602, A.R. 703-704, A.R. 707-714, A.R. 720, A.R. 737.)

Finally, although the ALJ rejects Plaintiff's fibromyalgia as a severe impairment, he also finds her fibromyalgia to be "stable". (A.R. 27.) It is unclear how this reference to stability reflects the severity of Plaintiff's fibromyalgia. In general, the term "stable" describes a condition that is unchanging, either for better or for worse. Therefore, the "stability" of Ms. Holden's "stability" fibromyalgia should not be considered a proper indicator of whether or not it is a severe impairment.

The Commissioner urges the Court to conclude that, even if the findings are not supported by substantial evidence, the ALJ's decision is still adequate because other severe impairments were found and included in the RFC. Yet, the court will not apply a harmless error analysis. *See Thomas v. Colvin*, 826 F.3d 956, 959 (7th Cir. 2016) ("conjecture that the ALJ would have reached the same conclusion had he explicitly addressed the alternative set of criteria invokes an overly broad conception of harmless error of the type we have criticized previously."). Indeed, the effect of the ALJ's failure to consider fibromyalgia as a severe impairment or explain his decision not to do so, ultimately led to a failure to include in Ms. Holden's RFC any limitations ascribed to her fibromyalgia.[5]

Overall, the ALJ does not support his determination that Ms. Holden's fibromyalgia was not a severe impairment with substantial evidence. The ALJ must provide explanation and offer

---

[5] Limitations related to Plaintiff's fibromyalgia include: standing in 20 minute intervals for a total of 1.5 hours in an 8-hour workday, sitting for 3 to 4 hours in an 8-hour workday, lifting occasionally 10 pounds, tolerating concentrated exposure to extreme cold, tolerating moderate exposure to extreme heat, interfering with attention and concentration 20% or more of the workday, being off task 20% or more of the workday, being absent from work 4 days or more per month, and being less than 50% as efficient as a normal worker. (A.R. 791-93, A.R. 703-04.)

7

reasons, supported by evidence, for rejecting probative evidence of Plaintiff's fibromyalgia. *See Revels v. Berryhill,* 874 F.3d 648, 662 (Cir. 2017) (remanding where ALJ failed to properly analyze claimant's fibromyalgia under SSR 12-2p); *Selian v. Astrue*, 708 F.3d 409, 419-20 (reversing and remanding where ALJ failed to consider treating source opinion diagnosing fibromyalgia and establish limitation per criteria in 12-2p). Accordingly, the decision is reversed and remanded for further consideration of Plaintiff's fibromyalgia consistent with the requirements of SSR 12-2p and the evidence of record.

## II. THE ALJ'S FINDING THAT OTHER WORK EXISTS IN SIGNIFICANT NUMBERS IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

At Step five of the sequential analysis, the burden of establishing that other work exists shifts to the Commissioner or ALJ. *See Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998). This burden can be met either by (1) the testimony of a Vocational Expert, or (2) by reference to the Medical-Vocational Guides or grids.[6] *Id*. In this case, the ALJ relied on the testimony of a Vocational Expert. (A.R. 66.)

Plaintiff contends the ALJ's decision is in error because the job of "Addresser" is obsolete, and the occupations of "Document Preparer" and "Systems Surveillance" require a reasoning level that is not compatible with her RFC. *See* DOT 249.587-018, 379.367-010. The Commissioner counters that any inconsistencies are the result of reasoning level comparisons between different vocations that are related to a claimant's educational background, as opposed to the job's mental or physical skill level requirements. *See Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2011) (unpublished) ("Job descriptions in the Dictionary of Occupational Titles

---

[6] Grids are matrices of "four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Heckler v. Campbell,* 461 U.S. 458, 461-62, 76 L. Ed. 2d 66, 103 S. Ct. 1952 (1983) (footnotes omitted).

8

contain several elements required to perform a specific jobs, including a claimant's GED, which is the level of formal and informal education required to perform a specific job.").

In *Hackett v. Barnhart*, the Tenth Circuit found that the jobs identified by the Vocational Expert were not compatible with the Plaintiff's RFC, noting that the RFC's limitation to "simple and routine work tasks . . . seems inconsistent with the demands of level-three reasoning." 395 F.3d 1168, 1176 (10th Cir. 2005). As a result, the *Hackett* court remanded the issue to further address "the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks, and the level three reasoning required by the jobs identified as appropriate for her by the VE." *Id.; see also Paulek v. Colvin,* 662 Fed. Appx. 588, 594 (10th Cir. 2016); *Lucy v. Chater,* 113 F.3d 905, 909 (8th Cir. 1997).

Here, the ALJ's RFC limits Ms. Holden to "unskilled, repetitive" work that is "simple, non-detailed and non-complex" and has a "routine task nature. . . [with]. . . very few variables. (A.R. 21.) A reasoning level of 3, which all of the jobs cited by the ALJ require, demands the ability to carry out detailed instructions and is therefore facially inconsistent with the Plaintiff's RFC. *Hackett*, 395 F.3d at 1176. Given this discrepancy, on remand, the ALJ should elicit further explanation from the vocational expert that will resolve the conflict between jobs identified and Plaintiff's abilities as set forth in the RFC.

## **ORDER**

Under the relevant standard of review, the court finds the ALJ's conclusions were not supported by substantial evidence. Accordingly, for the reasons set forth above, the Court **REVERSES** and **REMANDS** this matter to the Commissioner for further proceedings consistent with this Memorandum Decision and Order.

Dated this 14th the day of January, 2019.

By the Court:

_____
Dustin B. Pead
United States Magistrate Judge